UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RAPHAEL AHARONOFF | |
| | CIVIL ACTION NO. |
| VERSUS | |
| | SECT. |
| M.S. RAU ANTIQUES, LLC | |
| And WILLIAM D. RAU | MAG. |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### I.  Introduction

1. This is the Complaint for violations of Louisiana State law, including but not limited to Unfair Trade Practices, Breach of Contract and Negligence. Plaintiff seeks all relief available by law, including but not limited to attorney's fees pursuant to LSA R.S. § 51:1947.

### II.  Jurisdiction and Venue

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1332, as the parties are domiciled in different states and the amount in controversy exceeds $75,000.  Venue is proper in this Court as the events described herein occurred in Orleans Parish, Louisiana.

### III.  Parties

3. RAPHAEL AHARONOFF ("Plaintiff") is an individual of full age of majority residing at all times relevant hereto in Tarzana, California.

4. M.S. RAU ANTIQUES, L.L.C. ("MS") is a Louisiana limited liability company with its principle place of business in New Orleans, Louisiana. MS is not in good standing due to failure to file annual report. MS is registered to do and is doing business in the State of Louisiana. MS may be served through its registered agent, William D. Rau, 630 Royal Street, New Orleans, LA 70130.

5. WILLIAM D. RAU ("Rau") is an individual of full age of majority residing at all times relevant hereto in the Parish of Orleans, Louisiana. MS and Rau are hereinafter referred collectively to as the "Defendants."

### IV. Factual Allegations

6. Beginning on or before January 14, 2018, Aharonoff and Rau commenced a contractual relationship whereby MS agreed to ship various items of jewelry to Plaintiff to be sold by Plaintiff in California.

7. The terms of the relationship were such that if Plaintiff sold the goods to his customers, Plaintiff would then compensate MS according to whatever transaction was operating at that time. On the other hand, if Plaintiff was unable to sell the goods, he would return the jewelry to MS.

8. For example, on January 14, 2018, MS shipped a fancy light yellow green diamond, valued at $55,000.00, and a Burma sapphire ring valued at $185,000.00. Plaintiff failed to sell the jewelry for a satisfactory price, so both items were returned to MS as per the parties' agreement.

9. Thereafter, on July 10, 2018, MS shipped three items to Plaintiff: a fancy deep orange diamond ring (#30-3304), valued at $106,000.00, an emerald, sapphire and diamond necklace (#30-4117),valued at $67,000.00, and a padparadscha sapphire ring (#30-6557), valued at $38,500.00.

10. Plaintiff was unable to sell items 30-3304 or 30-6557, but did receive an offer on the emerald, sapphire and diamond necklace (#30-4117) in the amount of $45,000.00.

11. Plaintiff and Rau negotiated a transaction on the necklace (#30-4117) and Rau agreed to accept the sale price of $45,000.00 on the condition that Plaintiff send MS a deposit in the amount of $5,000.00.

12. On July 30, 2018, Plaintiff paid the agreed-upon $5,000.00 via check number 2232. Plaintiff returned the unsold merchandise (#30-3304) and (#30-6557) as agreed. Plaintiff was to remit the remaining sale proceeds of (#30-4117) upon receipt from Plaintiff's client.

13. Continuing with their business relationship, on July 31, 2018, MS shipped two pieces to Plaintiff, a Colombian emerald and diamond necklace (#30-6810), valued at $160,000.00, and a Colombian emerald and diamond ring (#30-3715), valued at $164,000.00. Neither of these items sold, so both were returned to MS per the parties' agreement.

14. Unfortunately, the sale of the necklace (#30-4117) fell through, so Plaintiff contacted Rau, who, instead of simply having Plaintiff return the ring, asked to see an inventory list to see if MS could sell any of Plaintiff's jewelry. Plaintiff sent Rau a list, from which Rau chose several items to be shipped by Plaintiff to Rau.

15. Consequently, on or about August 6, 2018, Plaintiff sent several items to MS to sell in New Orleans: a Gubelin emerald (# 1), valued at $98,000.00, a white gold ring with sapphires and diamonds (# 2), valued at $34,000.00, a pair of rubies (# 3), valued at $19,500.00, and another pair of rubies (# 4), valued at $18,000.00.

16. And on August 16, 2018, MS shipped five more items to Plaintiff for sale: a fancy light yellow diamond ring (#30-7037, valued at $78,900.00, a Colombian emerald ring (#30-

7816), valued at $55,900.00, a Diva diamond ring (#30-6543), valued at 11,900.00, a Tiffany Aquamarine ring (#30-6545), valued at $11,450.00, and a Green Tourmaline ring (#30-6534), valued at $3,360.00.

17. Plaintiff received an offer on the fancy light yellow ring (#30-7037) in the amount of $60,000.00. Plaintiff discussed the offer with Rau, and MS agreed to the sale price for (#30-7037) of $60,000.00.

18. Once again, the sale of the ring (#30-7037) failed to conclude and the ring (#30-70370 is presently in the possession of Plaintiff's client out of the country.

19. At this point, the business relationship between the parties soured. Several correspondence were exchanged, but the parties could not agree to go forward together.

20. As such, the parties contracted with Eli Noor Fine Jewelers to act as a custodian for the disputed jewelry pending amicable resolution of the dispute.

21. The parties agreed as follows: Plaintiff was to deliver the necklace (#30-4117)(sold for $45,000.00) to Eli Noor, and in turn, MS was to return items (#2), (#3), and (#4) of those pieces sent by Plaintiff to MS on November 6, 2018. MS was to retain possession of the Colombian emerald ($1), valued at $98,000.00, until such time the parties received all of their respective property.

22. Unfortunately, Eli Noor, upon receipt of a FedEx return package label from MS, shipped the custodial necklace (#30-4117) to MS. And MS failed to ship items (#2), (#3), or (#4) to Eli Noor as agreed. Hence, MS received its own property back (#30-4117), and Eli Noor thus destroyed any leverage Plaintiff might have had to recover his property.

23. At present, therefore, MS retains possession of all four of Plaintiff's pieces (#1), (#2), (#3),

and (#4), whose value totals $169,500.00, plus the $5,000.00 deposit Plaintiff made on the failed sale of the necklace.

24. For his part, Plaintiff remains liable unto MS in the amount of $60,000.00 due to the failed sale of the ring (#30-7037) (in Plaintiff's client's possession).

25. Consequently, the instant disputes concerns the difference in value between property held by MS and the ring. The total dispute therefore, is $114,500.00.

## First Claim for Relief
### (Unfair Trade Practices)

26. Plaintiff realleges and incorporates paragraphs 1 through 25.

27. Louisiana Revised Statute § 51:1409(A) reads in pertinent part:
"Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405, may bring an action individually but not in a representative capacity to recover actual damages."

28. Defendants knew, or should have known they hold items of value far exceeding the value of the items in Plaintiff's possession, custody or control. Indeed, Defendants are seeking to leverage Plaintiff's property for unfair and deceptive reasons.

29. Plaintiff suffered an ascertainable loss of money as a result of Defendants' unfair and deceptive practices. Consequently, Defendants are liable unto Plaintiff for damages, including but not limited to reasonable attorney's fees.

## Second Claim for Relief

### (Breach of Contract)

30. Plaintiff realleges and incorporates paragraphs 1 through 25.

31. Louisiana Civil Code Article 1994 renders an obligor liable for failure to perform a contract. Said obligor is liable for the damages caused by his failure to perform a conventional obligation. Such failure to perform may result from nonperformance, defective performance, or delay in performance.

32. In order to prevail on a breach of contract claim, the plaintiff must prove by a preponderance of the evidence: 1) defendant owned him an obligation; 2) defendant failed to perform the obligation; and 3) defendant's failure to perform resulted in damage to the plaintiff. *Hayes Fund for the First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mt., LLC*, 14-2592 (La. 12/8/15), 193 So.3d 1110, 1115; *Mouton v. Generac Power Sys.*, 14-350 (La. App. 3 Cir. 11/5/14), 152 So.3d 985, 997.

33. Defendants owe Plaintiff an obligation to pay for, or return the items of value Plaintiff sent to Defendants; Defendants have steadfastly refused to honor such obligation; and such failure has caused, and is causing Plaintiff damages of at least $114,500.00.

34. Defendants are liable unto Plaintiff for their breach of contract.

## Third Claim for Relief

### (Negligence)

35. Plaintiff realleges and incorporates paragraphs 1 through 25.

36. Negligence is defined in Louisiana Civil Code Article 2315, which provides in relevant part, "Every act whatever of man that causes damages to another obliges him whose fault it happened to repair it."

37. There are four elements that a plaintiff must prove to be successful in a Louisiana Negligence case. They are (1) Duty; (2) Breach; (3) Causation and (4) Damages.

38. First, the plaintiff must establish that a defendant owes him a duty to exercise reasonable care. Second, the plaintiff must establish that a defendant breached that duty through action or inaction. Third, the plaintiff must establish that the breach is both the factual cause and legal cause of plaintiff's injuries. Finally, the plaintiff must establish that he suffered an injury.

39. Defendants owed a duty to Plaintiff because the business relationship between the parties was clearly established that one would ship jewelry to the other to be sold in the recipient's district. If those items did not sell, they would be returned to the owner. Defendants breached that duty by failing to return the unsold merchandise. Such breach is both the legal and the factual cause of Plaintiff's damages.

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief in his favor as follows:

1. Actual damages to be determined by the jury;
2. Attorneys' fees;
3. Costs and expenses incurred in the action; and
4. Such other and further relief as is appropriate.

PLAINTIFF DEMANDS A TRIAL BY JURY.

DATED this 17th day of January, 2019.	PATRICK MILLER LLC

/s/ *Marc R. Michaud*
Marc R. Michaud (28962)
400 Poydras Street, Suite 1680
New Orleans, Louisiana 70130
Telephone: (504) 527-5400
Facsimile: (504) 527-5456
E-mail: mmichaud@patrickmillerlaw.com

8